## Freeman and Wife *versus* Shreve.

S., an attorney at law, for a consideration of $5000, agreed with F. that he would expedite the settlement of an estate in New Jersey, in which the wife of F. had an interest, and secure said interest for her. At the termination of the proceedings, the chancellor in New Jersey made an order, granting a certain sum, out of the general fund in litigation, as solicitor's costs. S. received $2500 out of this allowance, although it did not appear he acted for other parties in the cause: *Held*, that F. was entitled to a credit for the amount S. had thus received.

January 21st 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Error to the Court of Common Pleas, No. 4, of *Philadelphia county*: Of January Term 1877, No. 211.

Assumpsit by E. Mercer Shreve against Chapman Freeman and Marcia R. Freeman, his wife. The *narr.* comprised three counts for professional services of plaintiff as attorney at law and solicitor in chancery, in a suit in the Court of Chancery of New Jersey, and in divers suits and business rendered to Mrs. Freeman, at her request, and necessary to her separate estate.

The pleas were non-assumpsit, set-off, payment with leave, &c.

The following facts were disclosed at the trial:—

Isaac B. Parker died, domiciled in New Jersey, leaving an estate of about $1,800,000, to be divided among his seven children, one of whom was Mrs. Freeman. The executors of the estate lived in Pennsylvania, but the assets were variously distributed in Pennsylvania, New York and New Jersey. There was a long legal controversy in this state as to what jurisdiction the administration belonged, which terminated in the assets in Pennsylvania being ordered to be distributed in chancery in New Jersey. Mrs. Freeman not having received any income from the estate, and being apprehensive that it was being wasted under the mismanagement of one of the executors, who had the almost exclusive control of the same, authorized her husband, Chapman Freeman, to employ an attorney in New Jersey to attend to her interests in that state. In 1873 Mr. Freeman engaged E. Mercer Shreve, Esq., a member of the New Jersey bar and a practitioner in chancery. Mr. Freeman agreed to give Mr. Shreve $5000, if he would expedite the settlement of the estate in New Jersey, obtain the prompt pay-

[Freeman *v.* Shreve.]

ment of the income of that portion which was coming to Mrs. Freeman, and secure the safe custody of the estate and his wife's interest, and take it out of the hands of the executors. To this proposition Mr. Shreve assented. The estate was in litigation for some time thereafter, during which the executors were discharged, the interest of Mrs. Freeman was set apart to her, and a final decree made, winding up the estate on June 1st 1875.

For services rendered during this period Mr. Shreve had received $3100, and this suit was brought for the recovery of the balance of the $5000.

There was a large number of counsel employed by the various parties in the estate. When the decree was made, or shortly afterwards, an application was made to the Court of Chancery, by the various solicitors who had been concerned in the litigation, for allowances in the way of taxable costs for services which had been rendered to the general estate. The chancellor made an allowance of $12,500, out of which Mr. Shreve received $2500. The defendants claimed that this amount should be credited on account of the $5000, but the plaintiff refused, offering, however, to credit them with the one-seventh of the $2500. The plaintiff did not inform the defendants that he had received his share of the general allowance, nor did he give any intimation to the New Jersey court of the contract he was under with defendants for a specific fee.

In their general charge, the court, Thayer, P. J., inter alia, said:—

"All the chancellor of New Jersey undertook to allow to Mr. Shreve was his allowance for his services to the general fund, and not a compensation for services rendered to Mrs. Freeman alone. He did not undertake to pass upon what was due from Mr. and Mrs. Freeman, as clients, to the plaintiff; that was a private matter, over which the chancellor of New Jersey neither had nor exercised any control, in the proceeding then pending before him.

"These allowances, which were made by the Court of Chancery, were not, by any means or in any sense, a compensation to the plaintiff as between him and his client for the particular service which he had rendered to that client.

"That was a matter between the client and counsel, with which the chancellor, who made the allowances for his services rendered to the general estate, was not then dealing.

"It does not, therefore, seem to me, I must confess, that the defendants have been at all injured by the plaintiff's having been awarded an allowance, by the Chancellor of New Jersey, for his general services to the estate of Mr. Parker, in common with the other counsel concerned in the settlement of the estate."

The verdict was for the plaintiff for the balance of the $5000, with interest, less the credit of one-seventh of the $2500, viz.: $357. The defendants then took this writ, assigning for error the portion of the charge noted.

*Benjamin Harris Brewster* and *George L. Crawford*, for plaintiffs in error.—The charge of the court took from the jury the question of fact which Mr. Freeman testified that his bargain for $5000 was to include all the services of the plaintiff in the case, whether rendered to the general fund or his client in particular, and that the defendants were to have the benefit of any allowance that could be obtained from the chancellor in relief of it. It is obvious that any chancellor would, in making such allowances, if informed that one of the litigating parties had so provided for compensation of their active counsel in the case, have equitably adjusted the general burden, the remaining distributees having made no such provision for their counsel. And there was a want of that *uberrimæ fidæ* required of counsel in the plaintiff not disclosing this to the chancellor, to at least obtain the benefit of the point before him, and in not disclosing to his clients the application of himself and the other counsel for the $12,500 fees allowed by their united action, without objection, that his clients might have their objections thereto presented and passed upon by the chancellor.

*Henry C. Titus*, for defendant in error.—The jury found that Mrs. Freeman was not entitled to this allowance by virtue of any contract between the parties; and apart from such a contract she could not claim it by law, for the chancellor could not pay for private services out of the general estate.

It is customary for the Court of Chancery to allow fees to the counsel of all parties out of the whole estate, to be taxed as part of the costs: Whitenack v. Stryker, 1 Green's Ch. (N. J.) 29; Re Will of Henry Vanderveer, 5 C. E. Green 463; Harris v. Vanderveer, 6 Id. 568.

An agreement made between an attorney and his client, the party to a suit, that the attorney shall prosecute or defend for a fixed sum, does not affect the right of the attorney to recover a larger amount as his taxable costs from the adverse party: Phœnix v. Romer, 1 Edwards's Sel. Cas. 353.

Mr. Justice SHARSWOOD delivered the opinion of the court, February 4th 1878.

It is undisputed and indisputable from the testimony of the plaintiff below himself that he was retained by Mr. Freeman, on behalf of his wife, "to secure the safe custody of the estate of Isaac Brown Parker and his wife's interest, and take it out of the hands of John Brown Parker. He (Mr. Freeman) said, 'If you will do that we will give you $5000.'" This, then, was the contract on the plaintiff's own showing. All the services which he could or did render to the estate were clearly within the scope of his duty under this undertaking. Had he failed in taking any steps which were necessary to secure the general fund, he would

[Freeman *v.* Shreve.]

have been derelict in his duty, and responsible to Mrs. Freeman and nobody else for any loss which she might sustain by his neglect. He would not have been responsible to the other claimants upon the fund, for he owed them no duty. He could in no event have called upon them for compensation, though in attending to and protecting the interest of Mrs. Freeman he was at the same time attending to and protecting theirs. All that he did in the cause was under and by virtue of his retainer as solicitor of Mrs. Freeman. It does not appear that he was retained or acted as solicitor for any other party to the cause. His services then were rendered under his contract to secure the safe custody of the estate and Mrs. Freeman's interest. No part of the $2500 which he received by the order of the chancellor, was for services rendered to anybody else but Mrs. Freeman. She was the owner of the seventh of the general fund, and to protect her seventh as long as it was undivided it was necessary to protect that general fund. To treat the services of the solicitor to the general fund as something distinct from and independent of his services for his client, as one of the joint owners of that fund, as was done by the learned judge below, we think was an error calculated to mislead the jury from the true question— the contract that the plaintiff was to receive $5000 in full for all his services in the cause. It is true that a chancellor will, out of a fund for distribution, order compensation to the counsel engaged, in his sound discretion, according to his estimate, of what they reasonably deserve to have. He will often order such compensation to the counsel of a losing party who is decreed to have no interest, on the equitable ground that being a necessary party he was compelled to litigate, or had sufficient reason. It is a charge which the fund ought in equity and good conscience to bear. But whatever the counsel thus receives ought to be regarded as a credit in account between him and his client. Let us take the case of a general retainer without any contract for a certain sum, and a suit is afterwards brought on a *quantum meruit*. Surely it will not be pretended that the amount received under such an order would not be admissible in evidence to reduce or satisfy the plaintiff's claim. When, therefore, there is a special retainer, and the solicitor is to do all that is required for a sum certain, the client is entitled to a credit for whatever he may receive from any other source growing out of the same employment. The offer to credit Mrs. Freeman with one-seventh of the $2500 is no answer to all this. If the contention of the defendant in error is sound, she has no right to this much even. Of the whole $12,500 paid out by the chancellor's order one-seventh was from Mrs. Freeman's share. Why Mr. Shreve was allowed a greater proportion than this we know not, nor is it material in this controversy. What is material and all that is material is that Mr. Shreve acted as solicitor for Mrs. Freeman and nobody else, and by special contract was to receive $5000

[Freeman *v.* Shreve.]

for all his services and no more.    It is clear then that Mrs. Free-man was entitled to a credit for the whole sum of $2500 which he had received.

Judgment reversed and *venire facias de novo* awarded.

A motion for a re-argument was subsequently made by defend-ants in error, which the court refused.