Commonwealth, Appellant, *v*. Edgerton Coal Co., Ltd.

Commonwealth *v*. Edgerton Coal Co., Ltd., Appellant.

Commonwealth, Appellant, *v*. Sharon Coal Co., Ltd.

Commonwealth *v*. Sharon Coal Co., Ltd., Appellant.

Commonwealth, Appellant, *v*. Alden Coal Co.

Commonwealth *v*. Alden Coal Co., Appellant.

Commonwealth, Appellant, *v*. Philadelphia Company.

Com'lth, Appellant, *v*. Jamestown & Franklin R. R. Co.

Commonwealth, Appellant *v*. Provident Life & Trust Co.

Commonwealth, Appellant, *v*. Delaware, Lackawanna & Western R. R.

*Taxation—Corporations—Valuation of capital stock—Act of June 8, 1891.*

Under the act of June 8, 1891, P. L. 229, the amount and rate per cent of dividends made by a corporation, and the amount carried to surplus or sinking fund, during the tax year, do not furnish an absolute indication or measure of the actual value in cash of the capital stock of a corporation, but are to be considered, with all other relevant facts, in determining what is its actual value in cash.

*Constitutional law—Title of act—Supplement—Act of June 8, 1891.*

A title of an act declaring it to be a supplement to a former act is a sufficient statement of the subject-matter, if the subject of the supplementary act be germane to the subject of the original act.

The act of June 8, 1891, P. L. 229, entitled " An act to provide increased revenues for the purpose of relieving local taxation, being supplementary to an act entitled ' An act,'" etc., is not in conflict with art. 3, § 3, of the constitution of Pennsylvania requiring the subject of an act to be clearly expressed in its title.

*Constitution—Uniformity of taxation—Corporations.*

While the legislature may, without making a revenue statute obnoxious to the constitution, classify corporations for purposes of taxation, it cannot discriminate between members of the same class. The rule for ascertaining the value of the property must be the same; the actual cash value of one capital stock in the same class cannot be ascertained from net earnings, another from profit, another from surplus and another from dividends, for each method will produce a different valuation and result in inequality. But each may be taxed on the actual cash valuation from any relevant evidence tending to establish the fact.

The act of June 8, 1891, P. L. 229, is not in conflict with § 1, art. 9, of the constitution of Pennsylvania, or § 1, art. 14, of the constitution of the United States, requiring that all taxes shall be uniform upon the same class of subjects.

Argued May 30, 1894. Appeals, Nos. 22, 23, 24, 25, 27, 28, 29, 30, 32 and 34, May T., 1894, by plaintiff and defendants, from judgments of C. P. Dauphin Co., March T., 1893, No. 301, June T., 1893, Nos. 21, 23, 353, Sept. T., 1893, No. 533, March T., 1894, No. 61, June T., 1894, No. 349, on appeals from tax settlement. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.  Affirmed.

Appeal from tax settlement.

In the case of Com. v. Edgerton Coal Co. the opinion of the court below was as follows, by SIMONTON, P. J.:

" This is an appeal by the corporation defendant from the settlement of an account against it by the auditor general and state treasurer for tax on capital stock for the tax year 1892, and it was tried by the court without a jury under the act of April 23, 1874.

"FINDINGS OF FACT.

" 1. The corporation is and was during the tax year, 1892, a limited partnership legally organized and doing business in this state.  Its officers, on Dec. 27, 1892, made to the auditor general, under the sanction of the prescribed oath, the capital stock report and appraisement required by the act of June 8, 1891, § 4 (P. L. 229).  It appeared from this report that the par value of defendant's capital stock was $20,000, divided into 200 shares of the par value of $100 each; that the net earnings of the corporation for the tax year were $46,938.43; that one dividend of 20 per cent, amounting to $4,000, had been paid during the tax year, and that the rest of the net earnings had been applied to the reduction of its floating debt, and there had not been any amount carried into surplus or sinking fund.  In the appraisement returned with the report, defendant's president and secretary declared that, after having duly sworn that they will with fidelity, according to the best of their knowledge and belief, estimate and appraise the capital stock of said company at its actual value in cash, as it exists on the first Monday

of November, 1892, not less, however, than the average price for which said stock sold during the year ended on said date, and not less than the price or value indicated or measured by net earnings or by the amount of profit made and either declared in dividends or carried into surplus or sinking fund of said company, they did, in pursuance of their aforesaid oaths, estimate and appraise the capital stock of said company at its actual value in cash as follows, viz: two hundred shares at two hundred dollars per share, amounting in the whole to forty thousand dollars.

"2. No evidence was introduced by the commonwealth on the trial, other than the report above referred to, tending to show the actual value in cash of the capital stock. Testimony was given on behalf of defendant, from which we find as a fact that it was in 1892 engaged in mining anthracite coal on leased land at a certain royalty per ton; that it mined about 240,000 tons during the tax year 1892, and that at the end of the year not more than 400,000 tons of coal remained in said land, and at the same rate of mining it will be exhausted within two years; that the coal is of inferior quality and the cost per ton of mining increases as the mine becomes more nearly exhausted; that defendant has no contingent or other fund to make good losses or depreciation in value of its said leasehold property, and when the coal has been entirely removed, as it will be in the next two years at the present rate of mining, the company will own nothing except a small amount of personal property; and we find, as an inference of fact from the evidence, that the actual value in cash of defendant's capital stock was not, between the first and fifteenth of November, 1892, the time as of which the appraisement is required by law to be made, greater than $40,000, the sum at which it was appraised.

"The question raised by the objection to the settlement specified in the appeal, will be practically decided when we have determined the principle on which the taxing act of June 8, 1891, requires defendant's capital stock to be appraised. The fourth section of the act, P. L. 229, after requiring a detailed report of the financial operation and standing of each corporation during the preceding tax year to be made by its officers to the auditor general, enacts as follows:

"'The president, chairman, secretary and treasurer, after being

duly sworn or affirmed to do and perform the same with fidelity and according to the best of their knowledge and belief, shall, between the first and fifteenth days of November of each year, estimate and appraise the capital stock of the said company at its actual value in cash. Not less, however, than the average price or value indicated or measured by net earnings or by the amount of profit made and either declared in dividends or carried into surplus or sinking fund, and when the same shall have so truly estimated and appraised they shall forthwith forward to the auditor general a certificate thereof, accompanied with a copy of their said oath or affirmation, signed by them and attested by a magistrate or other person duly qualified to administer the same.'

" As stated in the findings of fact, the officers of the corporation defendant reported to the auditor general that, having taken the prescribed oath, they appraised the capital stock at $40,000, which was twice its par value. But the auditor general construed the act to require the capital stock to be appraised at not less than a principal sum, six per cent of which would equal the net earnings for the year, and, as it appeared from the report that the net earnings of the corporation for this period had amounted to $44,938.48, he did not accept the appraisement made by defendant's officers, but substituted his own appraisement, made on the principle above stated, and settled the amount appealed from on that basis.

" [We have recently decided in an opinion filed in Commonwealth v. Sharon Coal Company, 23 June Term, 1893, that the construction then put upon the act by the auditor general is incorrect, and that only so much of the income of the corporation—whether called net earnings or amount of profit made— as is declared in dividends or carried into surplus or sinking fund, is made the measure of the minimum price or value of the capital stock; and, following that decision, we must hold that defendant's net earnings not divided nor carried into surplus or sinking fund, but applied to the payment of its debts, did not measure the value of its capital stock.] [1]

" But in this case there was a twenty per cent dividend made, amounting to $4,000, and the learned attorney general contends that the minimum value at which defendant's capital stock can be appraised must be a sum, six per cent of which

would equal the amount of this dividend. In his very able brief he argues that the officers had a right to appraise the stock, but they are subject to the limitation that its value must be measured by the amount of profit made; not by contingencies, past or present; not by actual value or cost; but by the arbitrary standard of net earnings construed to mean 'the amount of profit made and either declared in dividend or carried into surplus or sinking fund.'"

"On the other hand it is contended, on behalf of defendant, that the amount of net earnings divided or carried to surplus or sinking fund, is not to be taken as a fixed or arbitrary measure of value, but it is to be considered, with all other pertinent facts, by the officers of the corporation, to assist them in arriving at a correct estimate of the 'actual value in cash,' of the capital stock; and, as we have already suggested, the case will practically be decided when we have determined which of these constructions is correct.

"It is manifest that the conclusion to be reached must depend largely on the relative weight to be given, in construing the clause of the act above quoted, to the one or the other expression 'actual value in cash,' and 'the price or value indicated or measured by net earnings or by amount of profit made and either declared in dividends or carried into surplus or sinking fund.' For if the capital stock is, in point of fact, to be appraised at 'its actual value in cash,' the appraisers must consider all the facts within their knowledge which will aid them to determine what the actual value is, and must appraise the capital stock at what they believe to be its actual value in cash; but if the amount at which it is to be appraised must be indicated or measured by taking the sum of the dividends made during the year as one term, and six per cent as another, in order to find the third, by the arithmetical rule of proportion, then, certainly, while the appraisement would be easily made, the appraisers might well hesitate to make oath that it represented the 'actual value in cash' of the capital stock.

"An examination into the purpose and language of the act will perhaps enable us to ascertain which of these apparently antagonistic constructions was in the mind of the legislature. A brief reference to the prior acts may help us to understand

its purpose. The latest of these, which on this subject was identical with those that preceded it, was the act of June 7, 1889, P. L. 420, which provided that where dividends of 6 per cent or more were declared in any tax year, the tax was to be assessed at the rate of one half mill for each one per cent of dividend; and where no dividend, or less than 6 per cent was declared during the year, the capital stock was to be appraised, and be subject to a tax at the rate of 3 mills on its appraised value.

" But it frequently occurred, in the practical application of these two different modes of ascertaining the value of the capital stock and assessing the tax, that the capital stock of some corporations on which less than 6 per cent dividend had been paid, was appraised above par, and was assessed with a larger tax than that of other corporations, which paid 6 per cent or more in dividends, and there was therefore a want of uniformity in the taxation. This is one of the reasons given in preambles 4, 5 and 6 for the passage of the act of 1891, as follows:

" ' Whereas, Experience has shown that the said twentieth and twenty-first sections result, in many cases, in requiring corporations which pay dividends less than six per centum to pay a larger amount of tax than corporations paying dividends of six per centum are required to pay;

" ' Whereas, also, It has been shown that the mode, prescribed in the twenty-first section of said act, of taxing corporations paying dividends of six per centum and upwards at a rate of tax to be measured by the dividends, results, in many cases, in corporations with large investments in bonds, mortgages and moneys at interest, paying a less rate of tax than other corporations without capital stock, and individual citizens are required to pay, under the first section of said act, upon the same kind of property;

" ' Whereas, also, It appears that the taxes imposed upon corporations and individual citizens by the first and twenty-first sections of said act can be made much more nearly uniform by taxing all corporations, limited partnerships and joint stock associations, having capital stock, at a fixed rate of five mills upon each dollar of actual value of their whole capital stock, including as well their bonds, mortgages and moneys at interest, as their franchises and property of other kinds.'

" It is also declared in the title that one of the purposes of the act is to provide 'for greater uniformity of taxation by taxing all the property of corporations, limited partnerships and joint stock associations having capital stock, at the rate of five mills on each dollar of its actual value;' and, as we have already seen, the clause we are now considering, in express terms, makes it the duty of the officers of the corporation to 'estimate and appraise the capital stock at its actual value in cash.'

" We are unable to see how any other conclusion can be drawn from these reiterated declarations, in the preamble, the title and body of the act, than that they express a deliberate intention to abandon the principle of measuring the taxable value of capital stock by the rate of dividends paid, and to substitute therefor taxation at a fixed rate on its actual value in cash, to be ascertained by an appraisement, made under oath, by designated officers of the corporations respectively.

" Against all this, and in favor of the construction contended for on behalf of the commonwealth, we have merely the requirements that the capital stock shall be appraised at 'not less than the price or value indicated or measured by . . . . the amount declared in dividends or carried into surplus or sinking fund.' The act does not prescribe that, in order to use the amount of the dividends as a measure, it is to be assumed that a 6 per cent dividend will indicate or measure par value; nothing is said on this point, and the construction contended for reads it into the act, as the sense an ambiguous expression was intended to convey. This might be permissible, if it would harmonize all the provisions of the act, but, instead, it creates discord between them; and we think it would violate all the canons of construction to interpret this clause of doubtful meaning in such a way as to neutralize and make of no effect another clause in the same section which is so plain that its meaning cannot be doubted. We are therefore of the opinion that the weight claimed for the expression 'indicated or measured' on behalf of the commonwealth, cannot be given to it; and that the fundamental requirement of the act is that the capital stock be appraised at its 'actual value in cash.' But, as it is one of the cardinal principles of interpretation that effect must, if possible, be given to every part of the statute, we must not ignore the expression 'indicated or measured,' but must,

if possible, construe it in harmony with the other plain declaration that the capital stock is to be appraised at its actual value in cash. We think this can readily be done by understanding it to require the appraisers to give such weight as their sound judgment dictates to the fact that such dividends were made during the year, as a help towards arriving at a just appraisement; and that if it appear to the auditor general on an examination of their appraisement, when returned to him, that they have not so done, he, with the state treasurer, is to supply the omission and correct it accordingly.

" Believing the correct interpretation of the act to be that just suggested, we cannot sustain the settlement made by the auditor general, nor can we say that a settlement based on an appraisement made on the theory that a dividend of 6 per cent would indicate or measure the capital stock to be at par value would be ipso facto correct.

" We have therefore to determine whether the capital stock of the corporation defendant for the tax year 1892 has been shown to have been appraised at less than its actual value in cash; and we find from the evidence on file that the correctness of the appraisement has not been impeached. The depositions show that all the net earnings of the year, except the amount divided, were applied to the payment of debts, and that the corporation owns nothing except the right to mine about 400,000 tons of coal at a fixed royalty, and a small amount of personal property. We cannot say, therefore, in the absence of testimony to that effect, that the appraisement is not correct.

" We have not thought it necessary to consider the question whether the legislature would have the constitutional right to fix an arbitrary standard of value upon the capital stock of corporations, for the purposes of taxation, for the reason that the act itself, when properly construed and interpreted, shows that it did not intend so to do ; and we refer to this question simply to suggest that the grave doubt whether it would have such right tends to confirm us in the construction which we have given to the act.

" The foregoing discussion leads to the following :

" CONCLUSIONS OF LAW.

" 1. The amount and rate per cent of dividends made, and

the amount carried to surplus or sinking fund, during the tax year, do not furnish an absolute indication or measure of the actual value in cash of the capital stock of a corporation, but are to be considered, with all other relevant facts, in determining what is its actual value in cash. [2]

" 2. The capital stock of the corporation defendant, has not been shown to be of greater value than that at which it was appraised by its officers, and therefore the settlement appealed from, in so far as it is based upon a higher valuation, is errone ous. [2]

" 3. The value of the capital stock of defendant for taxation for the tax year 1892 is $40,000, the amount at which it was appraised by its officers.

" The commonwealth is entitled to recover in this case as follows:

| | | |
|---|---|---|
| Tax, five mills on $40,000.00, . . . . | $200 | 00 |
| Interest, March 24 to December 5, 1893, at 12 per cent per annum, . . . . . | 16 | 67 |
| Attorney general's commission, 5 per cent, . | 10 | 00 |
| Total, . . . . . . | $226 | 67 |

" For which judgment is directed to be entered, if exceptions be not filed within the time limited by law."

In the case of Com. v. Sharon Coal Co., no dividends had been made during the year, nor had any amount been carried into surplus or sinking fund, but the net earnings for the tax year were $6,406.79. The opinion of the court below was in part as follows:

" By the terms of the act the officers of the corporation are required to estimate and appraise the capital stock of said company at its actual value in cash, not less, however, than the average price which said stock sold for during the said year, and not less than the price or value indicated or measured by net earnings, or by the amount of profit made and either declared in dividends or carried into surplus or sinking fund.

" The auditor general and state treasurer construed this clause as if the words net earnings were wholly independent of those which follow; and, indeed, just as they would have construed it if all the words following had been omitted, and the legislature had said only that the capital stock must be appraised at

a sum not less than the price or value indicated or measured by net earnings.

" But the rest of the clause must have some meaning, and it is well settled that in construing statutes effect must, if possible, be given to every word used to express the legislative will, and that nothing should be rejected, and nothing can be added except by implication from what is expressed.

" We must therefore inquire what force and effect is to be given to the rest of the clause. When we attempt to do this, the first question which meets us is whether 'amount of profit made' means the same thing as 'net earnings' or is a separate and different thing. It is said in Jones Mfg. Co. v. Commonwealth, 69 Pa. 137, that 'net earnings or income are the products of the business, deducting the expenses only;' citing Commonwealth v. Penn Gas Coal Co., 62 Pa. 422, which is to the same effect. And in Eyster v. Centennial Board of Finance, 94 U. S. 503, it is said by Chief Justice WAITE, that the receipts of a corporation over and above its current expenses are the profits of its business.

" Both these definitions are undoubtedly correct, and combining them and assuming, what is manifest, that the receipts of a corporation are the products of its business, we arrive at the conclusion that if one of these, less expenses, equals its net earnings and the other, less expenses, equals its profits, the net earnings and profits must equal each other. Any other construction would, in our opinion, involve a manifest absurdity. For if the net earnings and the amount of profit made by a corporation are not the same, then clearly, by the express terms of the act, the price or value of the capital stock is to be measured by one or the other of these only, and not by both; by net earnings or by amount of profit made. But, in this event, which, in any given case, is to be taken? And who is to determine which? And how can uniform taxes be assessed when one or the other of two different measures of value may be adopted? As well might the legislature prescribe, as the rule to be adopted by local assessors in appraising real estate, that they must assess it at the price at which it would sell for cash, or else on some other basis, for example, at the amount for which it would be accepted as security by a careful money lender—which would be much less than it would sell for—and leave it to the caprice

of the assessor to adopt whichever test he might choose in each particular case. We shall not be willing to believe that the legislature has prescribed alternative tests of value, either of which may be adopted at the will of officers of the corporation, or the auditor general and state treasurer, in assessing capital stock, until it makes its intention so plain that it cannot be mistaken.

" But it is not the total amount of profit made which is prescribed as the test of the minimum value of the capital stock. It is the 'amount of profit made and either declared in dividends or carried into surplus or sinking fund.' The amount so applied may be much less than the whole amount of profit realized from the business of the year, and therefore much less than the whole net earnings. But if only so much of the profit as is so applied is to be used as a test, and if, as we have seen, the profit is the net earnings, then only so much of the net earnings as is ' either declared in dividends or carried into surplus or sinking fund' is prescribed as a test of minimum value. In other words, the correct construction of the clause in question is, that so much of the income of the corporation—whether called net earnings or amount of profit made—as is either declared in dividends or carried into surplus or sinking fund, is made the test of the minimum price or value of the capital stock; thus applying to the appraisement of the capital stock of all corporations subject to the tax the same rule that was applied in the act of 1889 to those making no dividends or less than six per cent, with a more distinct declaration than was contained in that act, that admissions to sinking fund are to be counted as dividends, and adding additions to surplus."

The commonwealth filed exceptions to (1) that part of opinion in brackets ; (2) its first and second conclusions of law ; (3) in not finding that the settlement of the accounting officers was correct ; (4) in not entering judgment for commonwealth for full amount claimed.

Defendants, and the Sharon Co. et al., filed exceptions alleging that the court erred in not sustaining their objections to settlement : (1, 2) that the act of 1891 violates art. 9, § 1, of the Pa. constitution and art. 14 of the amendments to the U. S. constitution, in so far as it imposes a tax of five mills upon the appraised value of the capital stock, because it discriminates

between property owned by appellants, represented by its capital stock and included in the appraised value thereof, and similar property owned by natural persons and by other corporations, some being taxed at three mills only and other property of the same class at four mills; (3) that §§ 4 and 5 of the act of 1891 are not clearly expressed in the title, as required by art. 3, § 3 of the constitution; (4, 5) and in entering judgment.

*Errors assigned* by the commonwealth were in overruling their exceptions, quoting them, and in entering judgments based upon the amounts found by the court.

*Errors assigned* by the Sharon Coal Co. et al. were in overruling their exceptions, quoting them.

*James A. Stranahan,* deputy attorney general, and *W. U. Hensel,* attorney general, for the Commonwealth.—Valuation should be based upon profits.

The purpose of the act of 1891 was to provide increased revenue, and, as shown by its preamble, " to impose increased taxation upon the capital stock of certain corporations." The evil sought to be remedied was the fact that corporations, which pay dividends of 6 per cent and more, did not bear their share of taxation.

The decisions in Com. v. Oil Co., 59 Pa. 62, and Com. v. Pa. Gas Coal Co., 62 Pa. 241, and more recently in Hamilton Steeled Wheel Co. v. Com., 12 W. N. 328, distinctly declared that when the tax is directed to be imposed upon the dividend basis, or upon the capital stock measured by the dividend standard, apprehensions of future depreciation in the stock are to be entertained.

In Com. v. Western Land and Improvement Co., 156 Pa. 455, the fact that the company's profits were made up in part of sales of its real estate—and an exhaustion thereof—was held to be no reason why the rule of measuring capital stock value by the 6 per cent dividend standard should not prevail.

If any other view of the law of 1891 is to be entertained, it will result in endless confusion and utter derangement of our financial system. Time out of mind it has been declared by the courts that the dividend furnished the rule by which the

value of the capital stock for tax purposes shall be measured:
Com. v. Ins. Co., 13 Pa. 165 ; A. & O. Telegraph Co. v. Com.,
66 Pa. 57.

The legislative intent was to comprise everything under the
term " net earnings " or " profit made." In the cases cited by
us and in those depended upon by the learned court below to
define " net earnings," it has been already established that this
term, and the other term, " profits made," meant the " pro-
ducts of the business, deducting the expenses only "—the re-
ceipts of a corporation over and above its current expenses.
Whichever of these two tests be applied, the court below admits,
the same result is attained. We contended that these broad,
comprehensive terms, used disjunctively, mean no more and
no less when separated into their elements: (*a*) Dividends
declared. (*b*) Increase of surplus. (*c*) Sinking fund additions.
And that these three terms, conjoined, cover and comprise
everything that " net earnings " or " profits " can stand for. There
are not two nor three " different measures of value prescribed,"
but the same measure or standard described three different
ways, so that there could be no possible mistake about it.

Nor can we find in the title and preamble to the act of 1891
the index to the construction which the learned court gives to
it. It is true that neither under the old law nor the new is the
value of all capital stock to be measured by the dividend stand-
ard—else the many stocks which pay no dividends would have
no value for tax purposes. It was to meet these cases that
the " actual cash value " clause was left in the law, and ap-
praisement was provided for those corporations which pay no
dividend. For many purposes corporate stock that pays no
dividend may have value : Com. v. Hamilton Mfg. Co., 12
Allen, 298.

The increase of revenues, uniformity of taxation, relief of in-
dividuals and corporations without capital stock, and every as-
sured aim and purpose of the new act, as expressed in its title,
text or preamble, are met by the commonwealth's construction
of it.

Actual cash value is to be at all times a subordinate consid-
eration ; and is only to be resorted to when no net earnings
nor profits are made. The intention of the act was simply to
extend the process of valuation in the act of 1889 to all divi-
dend paying corporations.

The title of the act of 1891 is sufficient: Com. v. Martin, 107 Pa. 185; State Line & Juniata R. R. Co.'s Ap., 77 Pa. 431; Allegheny County Home's Ap., 77 Pa. 77; Millvale Borough v. Ry., 131 Pa. 19; .Com. v. Sellers, 130 Pa. 35; Boro. v. Owens, 6 W. N. C. 492; Clearfield Co. v. Cameron Twp., 135 Pa. 88; Craig v. Church, 88 Pa. 66; Com. v. Deibert, 2 Dist. R. 446; Esling's Ap., 89 Pa. 209; Hawes Mfg. Co.'s Ap., 1 Mona. 353; Union Pass. Ry. Co.'s Ap., 81 Pa. 91; Pottstown Boro. Case, 117 Pa. 538.

The act of 1891 does not violate the constitutional require-ment of uniformity of taxation: Fox's Ap., 112 Pa. 337; Com. v. Brewing Co., 145 Pa. 85; Com. v. Del. Div. Canal Co., 123 Pa. 596: Hawes Mfg. Co.'s Ap., 1 Mona. 357.

*M. E. Olmsted*, for the seven corporations, defendants.—The argument of the commonwealth seems based upon the assump-tion that the tax in question is a tax on dividends, or on net earn-ings, or on profits.  But that assumption is in direct conflict with the fact and with the frequent rulings of this court: Com. v. Standard Oil Co., 101 Pa. 119; Com. v. Penna. Coal Co., 5 Pa. C. C. R. 90, in note; Fox's Ap., 112 Pa. 337; Fidelity Co. v. Loughlin, 139 Pa. 612.

The mischief to be remedied by the act of 1891 was the in-iquity of making, in certain cases, the dividend the arbitrary standard of the taxation of corporate stocks.  To provide against this mischief the obvious remedy was to wipe out the obnoxious and intolerable dividend basis of taxation and to tax all capital stock, as stated in the title of this act of 1891, at the rate of five mills upon each dollar of its actual value.

Net earnings are the receipts of a corporation less its actual operating expenses, without any deduction for diminution in value of the body of the property, as in the cases of oil, coal and natural gas companies, or for interest or other fixed charges, as in the case of railroad and many other corporations, and yet these things must be deducted from the net earnings before the actual profits can be determined.  Profits may or may not be declared in dividends or carried into surplus or sinking fund.  Very frequently they are simply allowed to remain in the "profit and loss" account of the company, ap-plicable to the payment of future dividends or to the payment

of expenses, or they are devoted to repairs or improvements to the property of the company. In a prudently managed company the profits are usually less than the net earnings and more than the dividends. Unquestionably the 20th section of the act of 1889, as amended by the act of 1891, requires the exercise of judgment and discretion upon the part of the corporate officers, and that their action shall be not a mere mathematical computation, but an estimate and appraisement of the actual value of the thing to be taxed.

The authorities cited on behalf of the commonwealth do not sustain its position. Com. v. Ocean Oil Co., 59 Pa. 61, and Com. v. Penn Gas Coal Co., 62 Pa. 241, do not involve the taxation of capital stock, but the taxation of net earnings or income. They do decide that, in computing the net earnings of a company, no deduction is to be made for the depreciation of plant.

Hamilton Steeled Wheel Co. v. Com., 12 W. N. 328, cited by the commonwealth, is authority to the contrary.

Com. v. Penna. Ins. Co., 13 Pa. 165, and A. O. Tel. Com. v. Com., 66 Pa. 57, simply hold that under the old laws the dividends declared were the arbitrary basis of taxation of capital stock, which was to be at one half mill for each per cent of dividend, etc. They are inapplicable to the present controversy for the simple reason that the act of 1891 was passed for the express purpose of doing away with the dividend basis and imposing the tax in every instance on an appraisement of the actual value of the capital stock.

The valuation made by the company's officers must be presumed correct until proven otherwise: Com. v. Lehigh Valley R. R., 37 Leg. Int. 407; Com. v. P. R. R. Co., 145 Pa. 74; Com. v. P. Ft. W. & C. Ry. Co., 74 Pa. 83; P. & A. Tel. Co. v. Com., 66 Pa. 70; Phila. v. Com., 52 Pa. 451; Com. v. Hays, 1 Pitts. 316; Speck v. Com., 3 W. & S. 324; Del. & Hud. Canal Co. v. Walsh, 33 Leg. Int. 349; City of New Orleans v. Louisiana Savings Bank, 31 La. 828; affirmed in 32 La. 1138. See, also Com. v. Atlantic & Great Western Railway Co., 53 Pa. 9–19; Com. v. Haines, 97 Pa. 228; Com. v. Erie and Pittsburg R. R. Co., 74 Pa. 94–99; Com. v. P. Ft. W. & C. Railway Co., 74 Pa. 83; Com. v. Lehigh Valley R. R. Co., 104 Pa. 89; Com. v. Lehigh Valley R. R. Co., 37 Leg. Int. 407.

The act of 1891, properly construed, does increase the revenue from taxation of corporate stocks.

If the commonwealth's construction is correct, the act is unconstitutional: Pa. Const., art. 3, § 3; art. 9, § 1; U. S. Const., Amend., art. 14, § 1; Dorsey's Ap., 72 Pa. 192; Union Pass. Ry. Co.'s Ap., 81 Pa. 91; Com. v. Martin, 107 Pa. 185; Beckert v. Allegheny, 85 Pa. 191; Ruth's Ap., 10 W. N. C. 498.

COMMONWEALTH, APPELLANT, V. EDGERTON COAL CO.

PER CURIAM, Oct. 1, 1894:

It seems to us, the clear and forcible opinion of the learned president judge of the court below ought to have compelled the assent of the commonwealth to this judgment.

The act of 1891 declares that each corporation "shall be subject to, and pay into the treasury of the commonwealth annually, a tax at the rate of five mills upon the dollar of the actual value of its whole capital stock of all kinds, including common, special and preferred, ascertained in the manner prescribed in said twentieth section."

Thus, the subject of taxation, "whole capital stock," common, special and preferred, is defined. Then the kind of value to be multiplied by the rate of taxation, is distinctly fixed; the stock may have several values; a market value determined by the selling price of its shares in open market; a speculative value based on calculation of future prospects and contingencies; or an actual value, ascertainable from the intrinsic worth of its assets immediately available or unavailable; on its profits or losses, covering a fixed period, and on business calculations for the future. And other elements of value besides these, in the mind of the business man, may be taken into account in arriving at a correct conclusion as to the actual value of the whole capital stock.

The act, then, prescribes a method for ascertainment of the actual value: "In every case, any two of the following named officers of such corporation, limited partnership or joint stock association, namely, the president, chairman, secretary and treasurer, after being duly sworn or affirmed to do and perform the same with fidelity, and according to the best of their knowledge and belief, shall, between the first and fifteenth days of November in each year, estimate and appraise the capital stock of

the said company at its actual value in cash, not less however than the average price which said stock sold for during said year, and not less than the price or value indicated or measured by net earnings, or by the amount of profit made and either declared in dividends or carried into surplus or sinking fund ; and when the same shall have been so truly estimated and appraised, they shall forthwith forward to the auditor general a certificate thereof, accompanied with a copy of their said oath or affirmation, signed by them, and attested by a magistrate or other person duly qualified to administer the same."

The act, thus far, directs what shall be taxed, the "whole capital stock ;" at what rate, "five mills ;" at what value, "its actual value in cash ;" then how and by whom, in the first instance, this value shall be ascertained. In the case before us, two of the officers, the chairman and treasurer, under oath, made an appraisement of the actual cash value, placing each of the 200 shares of the company at $200, and the aggregate at $40,000. There were no sales of stock during the year for which the report was made, so that this element prescribed as determining a minimum of value, was not present in this case. One dividend of 20 per cent, or $4,000, for the whole authorized stock, was declared, although $44,938.48 was the surplus or net earnings; the surplus, however, was appropriated to payment of the floating debt of the company. The two appraisers, designated by the act, made oath that they had performed their duty with fidelity according to the best of their knowledge and belief in their appraisement of the stock at an actual cash value of $200 per share.

On their certificate being filed with the auditor general, it became subject to his scrutiny and that of the state treasurer under this proviso to the law : "Provided that if the auditor general and state treasurer, or either of them, is not satisfied with the appraisement and valuation so made and returned, they are hereby authorized and empowered to make a valuation thereof, based upon the facts contained in the report herein required, or upon any information in their possession, or that shall come into their possession, and to settle an account on the valuation so made by them for the taxes, penalties and interest due the commonwealth thereon."

The two appraisers designated by the act, having either full

knowledge, or the means of full knowledge, of all the business of the company, necessary to an approximately correct esti- mate of the value of the company's shares, and the officers of the commonwealth having little or none, any dissatisfaction on the part of the latter, based on a mere inspection of the report, must arise from diverse interpretations of the law. And that is all that is alleged here. The auditor general and state treas- urer made an appraisement, based on the amount of net earn- ings in the report, and raised the appraisement of the actual cash value of the capital stock to $748,974.66, being more than eighteen times the actual cash value put upon it by the chair- man and treasurer of the company. This, the commonwealth argued, is the actual cash value " indicated by the net earnings or profit made," as given in the report. It will be noticed that the $44,938.48 net earnings set out in the report, was not divided among the stockholders, or carried into surplus or sinking fund. The company paid its debt with it. It is per- fectly plain that no inference is warranted from these facts, justifying such a change from the appraised value. The audi- tor general assumed that the cash value was a principal sum, 6 per cent of which would equal the net earnings, without re- gard to what disposition was, and ought to have been, in good business management, made of the earnings. No man, as to the stock of any business corporation, can make oath that its actual cash value is a sum which, multiplied by 6, would equal its net earnings. No prudent man, in business transactions, ever does adopt such an estimate as conclusive of an actual cash value. It is one element which is properly considered in making such an estimate, but only one out of many. In purely manufacturing enterprises, which depend for continuance and success on a supply of materials which is inexhaustible, and on skilled and other labor which may always be obtainable, such a calculation would have greater probability in favor of " actuality." But in coal mining, oil and gas production, ore mining, quarrying, lumbering, and innumerable other enter- prises, the actual cash value of the stock, cannot, from the very nature of the business, be determined solely by the net earnings for any one year. The net earnings for a year may equal 6 per cent on a large principal; the very next year, the thing, mine, oil or gas territory, quarry or timber, represented by the capi-

tal, may be wholly exhausted, practically worthless, and the stock become of no value whatever.

In this view, large net earnings may largely depreciate the actual value of the stock. For example, suppose the greater part of the paid-up capital stock is represented by a tract of coal land, and that large net earnings in the year reported are attributable to large production; this large production would indicate large exhaustion of the coal, and, necessarily, impairment of the capital.

To arrive at the actual value, possibilities and probabilities, as well as things certain, are properly considered.

The legislature, instead of saying the actual cash value should be that sum, 6 per cent of which would equal the net earnings, thus plainly expressing an intention of which they have left no doubt in the estimate to be made on the average price of sales, go no further than to declare that net earnings shall constitute one fact as the ground of an estimate of the actual cash value. The prominent idea or thought of the whole act, as the learned judge of the court below has so clearly shown, was to base taxation on the actual cash value, and that this should be determined from facts, not theories, in all cases except the one, that this value should in no case be less than the average price at which the stock sold during the year. In thus, in this one case, fixing a minimum, it is the only theoretical estimate adopted; and this has in it a foundation of at least approximate certainty; the worth of anything is " Just so much money as ' twill bring." The man who parts with his property at a price, and he who buys it, may be assumed to have that knowledge which warrants the one in not accepting less, and the other in not paying more than the actual value. The wisdom and justice, both to the taxpayer and the commonwealth, of thus basing taxation on actual value, are so manifest, so completely in accord with the common sense of justice, that it would require a very convincing demonstration that the legislature intended otherwise, before we would disturb this judgment; the learned attorney general has failed to so convince us, while the judgment of the court below is vindicated by the soundest reasoning, leading to conclusions that are irresistible.

In thus expressing our approval of this judgment, we do not intend to, in any degree, deny the power of supervision

and change, by the commonwealth's officers, of the appraisement as returned; but the report is of a fact, not a calculation, and if the officers are dissatisfied, the act declares they shall "make a valuation thereof based upon the facts contained in the report herein required, or upon any information within their possession, or that shall come into their possession." Discrepancies between large net earnings, profits, dividends or surplus, and small actual cash value, may suggest inquiry to the auditor general. If so, he has by law almost unlimited powers of investigation for ascertainment of the truth; such as the right of examination of books, papers and witnesses; the right to imprison witnesses for disobedience of his summons, or for a refusal to answer. But here, on a mistaken theory that the actual cash value was a sum which, multiplied by 6, would produce the net earnings, the appraisement was arbitrarily changed. There is nothing in the law to justify the change on the facts in the report; it is not pretended that any information had come into their possession, of fraud or false swearing.

We hold with the court below, in its first conclusion of law on the facts, that:

"The amount and rate per cent of dividends made, and the amount carried to surplus and sinking fund during the tax year, do not furnish an absolute indication or measure of the actual value in cash of the capital stock of a corporation, but are to be considered with all other relevant facts, in determining what is its actual value in cash."

Therefore the judgment is affirmed, and the appeal is dismissed at costs of appellant.

COMMONWEALTH v. EDGERTON COAL COMPANY, APPELLANT.

PER CURIAM, Oct. 1, 1894:

All the questions raised on this appeal have been decided in appeal of Commonwealth between the same parties, No. 27 May Term, 1894, and of defendant in Commonwealth v. Sharon Coal Company, Nos. 22 and 28 May Term, 1894. The judgment is affirmed and appeal dismissed at costs of appellant.

COM. V. SHARON COAL CO., LTD., APPELLANT.

PER CURIAM, Oct. 1, 1894:

The rule stated by the learned judge of the court below in Commonwealth v. Edgerton Coal Company, No. 27 May Term, 1894, of this court, in which opinion has this day been filed, we think applicable to the facts in this case. Its application here in no way affects the judgment. The court has found as a fact that the actual cash value of the whole stock was the amount estimated by the appraisers, on the construction of the act of 1891, that: "The amount and rate per cent of dividends made, and the amount carried to surplus and sinking fund during the tax year, do not furnish an absolute indication or measure of the actual value in cash of the capital stock of a corporation, but are to be considered with all other relevant facts in determining what is its actual value in cash." On that rule, we affirm this judgment.

The further claim is made by appellant that the act of 1891 is unconstitutional, in that,—1. It discriminates for purposes of taxation between property owned by appellant, and property owned by natural persons and other corporations. 2. It is in conflict with section 1, article IX, of the constitution of Pennsylvania, and section 1, article XIV, of the constitution of the United States, because it imposes a tax of five mills on capital stock of appellant, and on stock of other corporations only three mills, and on other property of the same class only four mills. 3. The fourth and fifth sections of the act are void, the subject thereof not being clearly expressed in the title, as required by article 3, section III, of the constitution of Pennsylvania.

As to the first and second objections, it has been settled that the legislature can, without making the revenue statute obnoxious to the constitution, classify corporations for purposes of taxation ; may sever a small class from a larger one ; might subject one class to taxation, and leave others untaxed: Commonwealth v. Brewing Co., 145 Pa. 85, and the cases there cited. And in Commonwealth v. Delaware Division Canal Co., 123 Pa. 596, it was decided that a different basis of taxation might be adopted on mortgages and loans held by individuals, and those held by corporations.

All properties, however, in the same class, must be taxed without discrimination in the rate of tax imposed; and the rule for ascertaining the value of the property must be the same; the actual cash value of one capital stock in the same class cannot be ascertained from net earnings, another from profit, another from surplus and another from dividends, for each method will produce a different valuation, and result in inequality. But each may be taxed on the actual cash valuation from any relative evidence tending to establish the fact.

As to the third objection, that two sections of the act are void because their subject is not expressed in the title, we think it cannot be sustained. The act is entitled, " An act to provide increased revenues for the purpose of relieving local taxation, being supplementary to an act, etc.," and then follows an enumeration of the acts of which it is a supplement. The act is a supplement to provide increased revenues by taxation. Every section of it is germane to the subject of the original bill, and it is decided in State Line and Juniata Railroad Co.'s Appeal, 77 Pa. 431; Millvale Borough v. Evergreen Railway Company, 131 Pa. 19, and in Craig v. Presbyterian Church, 88 Pa. 42, that if the subject of the supplementary act be germane to the subject of the original act, it is a sufficient compliance with the mandate of the constitution.

None of appellant's assignments of error are sustained, therefore the judgment is affirmed and appeal dismissed at costs of appellant.

### COMMONWEALTH, APPELLANT, v. SHARON COAL COMPANY.

Per Curiam, Oct. 1, 1894:

This is an appeal by the commonwealth from the same judgment affirmed in appeal of defendant, opinion filed this day. The assignments of error call for no further notice. The judgment is affirmed and appeal is dismissed at costs of appellant.

### COMMONWEALTH v. PHILA. CO. ET AL.

Per Curiam, Oct. 1, 1894:

As these cases are ruled by Commonwealth v. Edgerton Coal Company, and Commonwealth v. Sharon Coal Company, opinions filed this day, the judgments are affirmed and the appeals dismissed at costs of appellants.