## Wenger's Estate

*Guy K. Bard* and *John E. Malone,* for petitioner.

*Robert Ruppin,* for accountant; *M. M. Harnish,* for general creditors.

APPEL, P. J., January 21, 1932.—This is a rule to show cause why the account of the executrix should not be opened and the Denver National Bank, a judgment creditor (hereinafter called the bank), permitted to file exceptions nunc pro tunc to all the items of credit charged against the real estate fund.

In addition, there are exceptions to the adjudication.

The estate of the decedent, consisting of real and personal property, is insolvent. There are lien debts of record, debts on which suits were brought within a year and which have been indexed, and general debts not of record. The real estate was sold by the executrix under an order of court for the payment of debts.

In her account the executrix separately accounted for the personalty and the proceeds of the sale of real estate. Credits were taken in the account of the personalty for administration expenses. In the account of the real estate fund, credit was taken for the payment of taxes, fire insurance premiums, interest on liens, costs of sale, cost of necessary title and lien searches, a proportionate part of attorney's fees and accountant's commissions. The balance of the real estate fund for distribution, as appears by the account, is $6074.74. The balance of the personal fund for distribution among the general creditors is $2119.98. The adjudication was filed October 29, 1931, and the bank was awarded a dividend of $444.92, along with all the creditors, out of the personal fund; and, also, being the first lien creditor, was awarded the entire balance of the real estate fund as shown by the account, to wit, $6074.74, making in all a total of $6519.66; thus showing a shortage on its claim of $1302.03.

Upon the return day of the rule no proof of service on or notice to the general creditors was filed. In its petition for the rule and in the exceptions to the adjudication the bank asks the court "to remarshal the items of the account so that all costs of administration and other costs be taken out of the personal property [fund] so that the Denver National Bank, the judgment creditor [bank], would receive the proceeds, up to the amount of its claim, of the real estate [fund]." Although the assets were clearly marshaled and the various credits were separately allocated to the personal and real estate funds in the account, the court is asked now to open and revise the account, to make a reallocation of the credits and a redistribution, so that the bank may receive the total real estate fund without any deduction for credits whatsoever.

The rule to show cause, etc., and the exceptions to the adjudication must be dismissed on two grounds:

First, because there has been no proof of service of the rule on or notice to the general creditors; and, second, because on its merits the contention of the bank cannot be sustained.

First. No exceptions being filed, the account in due course became absolutely confirmed. It is conceded that all the items of credit in the account charged both against the personal fund and the real estate fund represent proper payments made by the executrix. The bank, to whom was awarded the entire balance for distribution, contends that all the credits charged against the real estate fund should have been paid from the personal fund, thus leaving intact the entire proceeds of the sale of the real estate for the bank without any deductions whatsoever. This question is sought to be raised by the above rule to open the account and to permit the bank to file exceptions nunc pro tunc, as well as by the exceptions filed to the adjudication. Treating it as a petition of review, when the rule was granted notice was directed to be served on all the general creditors who participated in the distribution of the personal fund and who would be vitally affected if the contention of the bank were sustained. Failure to give such notice is fatal, and for this reason the rule to show cause, etc., must be discharged, and the exceptions to the adjudication dismissed.

Second. We believe, however, on its merits the contention of the bank cannot be sustained. In their argument counsel have confused the costs of administration with the costs incident to the conversion of the real estate by the orphans' court sale. They overlook also the fact that some of the payments were made by the executrix in order to conserve the real estate and to produce the fund for creditors. Most of these payments, such as interest on liens, etc., evidently forestalled foreclosure, execution and a sheriff's sale.

An analysis of the credits allocated to and charged against the real estate fund will disclose that $243 was paid on account of taxes; $158.01, for fire

insurance premiums; $212, interest on judgment (the bank judgment); $632, interest on mortgages; $195, attorney's fees; $197.50, accountant's commissions; $100, title and lien searches (admittedly necessary), and $87.75 for various items directly relating to the sale of the real estate.

In Teaf's Estate, 7 Pa. C. C. 463, Penrose, J., held that auctioneer's fees, the accountant's commissions, a reasonable attorney's fee and taxes should be paid out of the fund realized from the sale of the real estate. At page 465, he says:

"It is very certain that the expenses incident to the sale of real estate cannot be regarded as 'costs of administration,' in the sense of being chargeable in the first instance upon personalty. The costs of raising a fund, including counsel fees (Freeman v. Shreve, 86 Pa. 135; McKelvy's Appeal, 108 Pa. 615; Dundas's Estate, 16 W. N. C. 458), auctioneer's charges, accountant's commissions, etc., etc., fall upon the fund itself. The duty to apply for an order of sale implies the right to employ all the agencies necessary to obtain the order and to carry it into execution; and the judgment creditor who avails himself of the benefit arising from a sale in the orphans' court cannot repudiate the burden."

There can be no reasonable doubt that the cost of fire insurance, interest on liens, and cost of necessary title and lien searches fall into the same category and are proper charges against the real estate fund. These items are not such costs of administration as should be first paid out of the personal fund to the injury of the general creditors. They are rather expenditures made by the executrix in order to conserve the real estate and incident to its sale for the payment of debts; in other words, they contributed to the production of the real estate fund. Even in the foreclosure of a mortgage and a sale by the sheriff on execution, the lien creditors are entitled to the proceeds only *after* certain deductions, such as costs of sale, taxes, interest on liens, etc.

We find that all the items charged in the account against the real estate fund were properly so charged, and were necessary payments made by the executrix in order to conserve the real estate and produce the fund for the creditors, to be distributed in the order of their legal priority. And in making these payments the executrix was using the agencies and processes appertaining to a sale in the orphans' court for the payment of debts and in the proper administration of her trust. In the language of Judge Penrose (Teaf's Estate, supra), "the judgment creditor who avails himself of the benefit arising from a sale in the orphans' court cannot repudiate the burden."

See, also, Becker's Administrators v. Espenshade, 8 Dist. R. 525 (accountant's commissions); Burgard's Estate, 26 Pa. C. C. 177 (apportionment of costs of audit); Darrah's Estate, 19 Pa. C. C. 287 (interest on mortgage); Ketran's Estate, 24 Dist. R. 1087 (fire insurance premiums).

In this last cited case, Gest, J., said, at page 1088:

"Ordinarily an executor has nothing to do with the real estate, and is neither bound to insure it nor justified in doing so, but in this case the personal estate was insufficient for the payment of debts, and it forthwith became the duty of the executor, under the Act of February 24, 1834, Sec. 20, P. L. 70 [now under the Fiduciaries Act], to apply to the orphans' court for an order to sell the real estate for the purposes of administration. This duty he performed, and the proceeds of the sale constitute the greater part of the assets in his account. We entertain no doubt that an executor or administrator in these circumstances is entirely justified in effecting, and especially in renewing, insurance against fire pending the sale of the real estate."

The rule to show cause is discharged; the exceptions to the adjudication are dismissed; and the adjudication is confirmed absolutely.

From George Ross Eshleman, Lancaster, Pa.