## Dickinson v. C. F. Heller Bindery et al.

*Seymour M. Heilbron* and *Anna M. Dickinson,* for plaintiff.

*Zieber & Snyder* and *George B. Balmer,* for C. F. Heller Bindery, defendant.

*Max M. Yaffe, Edgar S. Richardson* and *John A. Moss,* for Berks County Trust Co., defendant.

SCHAEFFER, P. J., May 4, 1942.—Both plaintiff and defendants have filed exceptions to the chancellor's findings of fact and conclusions of law in this case.

In their second exception defendants except to the finding by the chancellor that "the actual value of all the property of The Bindery was about $43,000." Manifestly this should read "the actual net value" of said property.

The same thing is true of the chancellor's twenty-seventh finding, which should read: "On December 31, 1938, the actual net value of all the property of The Bindery was about $30,000."

We are dealing here not with gross assets, but with the value of all assets less corporate obligations.

The fundamental issue, as set forth in defendants' exceptions and argument, is the chancellor's valuation of the net assets of the bindery. Is there competent evidence to support the chancellor's findings that on December 31, 1937, the stated capital of the bindery was $54,850, and the actual net worth of the bindery's assets only about $43,000; and that on December 31, 1938, the stated capital of the bindery was $54,000, but the actual net worth only about $30,000? In fixing the actual net worth of the corporation assets, the chancellor relied upon the amounts set forth in the corporation's capital stock returns made to the Commonwealth of Pennsylvania for the years 1937 and 1938. Both returns are supported by an affidavit and certificate of valuation. To the 1937 return the affidavit and certificate are made by A. G. Dickinson and H. V. R. High, the president and secretary of the bindery, respectively; to the 1938 return the affidavit and certificate are those of A. G. Dickinson, president, and C. A. Newcomet, secretary. In both these officers swear that the statements made in the report are true and correct and that with fidelity, etc., they have estimated, valued, and appraised the capital stock of the corporation at the actual value as it existed at the close of the period for which the report was made, and they specifically swear that such valuation is not less than:

First—The average price which said stock sold for during the period, and

.    .    .    .    .    .    .

Third—Not less than the actual value indicated or measured by consideration of the intrinsic value of its tangible property and assets and of the value of its goodwill and franchise and privileges as indicated by the material results of their exercise, taking also into consideration the amount of its indebtedness.

As of December 31, 1937, the president and secretary valued 1,097 shares of the stock at $38.99 per share or a total of $42,778.78.

As of December 31, 1938, the president and secretary valued 1,080 shares at $26.87 per share or a total of $29,029.44.

Defendants contend that the burden was upon plaintiff to prove, by methods other than offering the capital stock returns, the actual value of all the assets and debts of the corporation. This would have involved a lengthy proceeding to have ascertained precisely what the assets and debts were and also the actual value. As the present officers of the corporation are defendants and plaintiff is one who has been excluded from an intimate knowledge of the affairs of the corporation, plaintiff would have had, in large part, to rely upon the cross-examination of defendants themselves. Patently this would have been like carrying coals to Newcastle, for the president and secretary, in response to the requirements of the statute, have in these capital stock returns done that very thing: they have sworn that they have faithfully valued the assets and have made return of their findings of value. As against the corporation and these defendants, plaintiff is justified in relying upon the valuations set forth in these returns duly made according to law on behalf of the corporation. As was said in Commonwealth v. Edgerton Coal Co. et al., 164 Pa. 284, 300, 301, and 303:

"The two appraisers designated by the act, [have]

either full knowledge, or the means of full knowledge, of all the business of the company, necessary to an approximately correct estimate of the value of the company's shares, . . . [their] report is of a fact, not a calculation . . .".

The report of the capital stock of a corporation for purposes of taxation, made by the proper corporate officers, is prima facie correct: Commonwealth v. South Lincoln Land Co., 19 Dauphin 449; Commonwealth v. Dunkard Valley Oil & Gas Co., 41 Dauphin 164.

The introduction into evidence by plaintiffs of these capital stock returns shifted the burden of proof to defendants; they had the opportunity to produce evidence that the value of the shares was higher than that shown by the returns, but they did not do so.

Another matter now challenged is the conclusion by the chancellor that the proxies executed in 1938 by Messrs. High and Eshelman to Anna G. Dickinson should be declared null and void. These proxies, as drawn, were for 10 years and were irrevocable. That given by High covered not only the 93 shares held by the Berks County Trust Company as collateral, but also the 120 shares held by the receiver of The Farmers Bank and 131 shares standing in his name as trustee. For these proxies Mrs. Dickinson gave no consideration whatever; whatever consideration passed to High and to Eshelman came from the corporation itself. When complaint is made by a minority stockholder concerning the management of the affairs of the corporation, a court of equity should be unhesitant in striking down an arrangement such as this by which the holders of the majority of the shares seek indefinitely to perpetuate their individual control at the expense of the corporation itself and the other stockholders.

Defendants' exceptions must be dismissed.

Plaintiff has excepted to the chancellor's failure to conclude that plaintiff is entitled to a reasonable allowance for counsel fees. In the ordinary suit either at law or in equity the successful party recovers his costs. These costs embrace the record costs of filing papers, issuing and serving writs and process, subpoenaing witnesses and the fees paid to witnesses; they do not, in the usual case, include counsel fees. But where plaintiff sues as a representative of a class and by his suit creates a fund which enures to the benefit of the class in general, the right of such plaintiff to have a reasonable sum for the payment of his counsel fees out of the fund so created seems to be well established: Schwartz v. Keystone Oil Co., 164 Pa. 415; Mann et al. v. Wakefield et al., 11 Pa. Superior Ct. 18. Such fees are recoverable by counsel out of the fund but they enure to the credit of the client: Freeman et ux. v. Shreve, 86 Pa. 135; McKelvy's and Sterrett's Appeals, 108 Pa. 615. The right of counsel to fees to be paid out of the fund created in stockholders' derivative suits is discussed and annotated in 39 Columbia Law Review 784.

The basis of plaintiff's counsel's claim to compensation to be paid by any person other than the person or persons who employed them is the creation of a fund in the hands of the bindery which enures to the benefit of plaintiff and all stockholders. We have decreed that the individual defendants pay to the bindery the sums heretofore paid by the bindery to the Berks County Trust Company on account of the principal and interest of the notes of Messrs. High and Eshelman. Of course, as the litigation is still incomplete, such repayments have not as yet been made; hence the fund out of which payment shall be made does not as yet exist. Nor can we say judicially that the sums decreed can or will be paid. Consequently, we must at this time sustain plaintiff's exception and decree the right of her counsel to be paid when such fund comes into being.

For the purpose of determining the amount of compensation to be allowed, leave is granted to plaintiff and her counsel to have a further hearing after our decree has been complied with.

And now, to wit, May 4, 1942, defendants' exceptions are dismissed and plaintiff's exception is sustained and an exception directed to be noted.