Commonwealth v. Delaware, Susquehanna & Schuylkill
R. R., Appellant.

*Taxation — Corporations—Valuation of capital stock — Appraisement—
Franchises—Act of June 8, 1891.*

The tax on capital stock is a tax on property, and it is proper to include
in its appraisement the value of the franchises and privileges enjoyed and
exercised by the corporation, and to determine the value of these by the
material result of their exercise.

Under the act of June 8, 1891, P. L. 229, the amount and rate per cent

of dividends made by a corporation, and the amount carried to surplus or sinking fund, during the tax year, do not furnish an absolute indication or measure of the actual value in cash of the capital stock of a corporation, but are to be considered, with all other relevant facts, in determining what is its actual value in cash.

*Practice, S. C.—Assignments of error—New trial.*

The Supreme Court will not consider an assignment of error to the refusal of the court below to grant a new trial, even where the case was tried without a jury.

Argued May 30, 1894.   Appeals, Nos. 26 and 36, Jan. T., 1894, by plaintiff and defendant, from judgment of C. P. Dauphin Co., March T., 1893, No. 302, on appeal from tax settlement.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Appeal from tax settlement.

The case was tried without a jury under the act of April 22, 1874, before SIMONTON, P. J., and McPHERSON, J.

The following opinion was filed by SIMONTON, P. J.:

" This is an appeal by the corporation defendant from the settlement of an account against it, by the auditor general and state treasurer, for tax on capital stock for the year ending the first Monday of November, 1892, and it was tried by the court without a jury under the act of April 22, 1874.

" FINDINGS OF FACT.

" 1. Defendant is, and was during the year 1892, a corporation of, and doing business in the state of Pennsylvania, chartered in April, 1890, with an authorized capital of $1,000,000, of which $400,000 was paid in prior to June, 1892, and the balance at that time.   Its railroad is located in the anthracite coal region of eastern Pennsylvania, and, including branches, is about sixty miles in length.   It runs in a devious course, and thus, and by means of branches from the main line, reaches a number of collieries, nearly all of which are owned and controlled by the firm of Coxe Brothers & Company, who also own nearly all the shares of stock in the railroad company ; it was built for the purpose of connecting these collieries with the various railroads which traverse that region, and does connect with the Pennsylvania, the Reading, the Lehigh Valley, and

the Jersey Central railroads; thus giving the owners of these collieries, and of this railroad, not merely access to the various markets for coal,—east, north and west—but also choice of roads over which to reach these markets, and with which to make traffic contracts. Nearly all the freight carried by the defendant is coal, and should this traffic fail, or be withdrawn, its capital stock would be comparatively valueless; but [there is no evidence in the case tending to show that there is any present prospect that this will occur, and, in view of the fact that this railroad and these collieries are owned by the same persons, it does not seem probable, so long as the coal mines are not exhausted; nor is there any evidence that this will take place for many years to come.] [8]

" 2. The gross earnings of the defendant during the tax year 1892 were $739,914.15, and its net earnings were $523,243.15, and it made one dividend during the year, on October 15, 1892, of forty (40) per cent, amounting to $400,000, out of net earnings realized to June 30, 1892; its net earnings June 30, 1892, to February 28, 1893, were about $450,000, and the amount of its surplus on the first Monday of November, 1892, was $242,142.89, in addition to book accounts amounting to about $100,000 in excess of its current indebtedness; and [there is no evidence in the case tending to show that its net earnings will be less in the future, except in so far as they may be affected by the general financial depression.] [9]   The total cost of defendant's railroad, which was completed in February, 1893, including equipment, was $1,159,323.70.

" 3. Defendant's president and treasurer made to the auditor general under the sanction of the prescribed oath, the report and appraisement required by section 4 of the act of 1891, P. L. 229, appraising defendant's capital stock at $2,000,000, which is double its par value. There were no sales of shares of the stock during the tax year.

" 4. The auditor general and state treasurer were not satisfied with, and did not accept this appraisement, but, as they understood to be their duty under the law, made an appraisement and fixed the value of said capital stock at $8,720,719.16.   In making this appraisement they had before them no other evidence of its actual value than that contained in the report made by the officers of the corporation, as above stated; and this

amount was adopted by them as the value of the capital stock, because it was the sum which at six per centum would produce $523,243.15, the amount of net earnings made by the defendant, as shown by said report.   On this valuation, so made by the auditor general and state treasurer, an account was settled against defendant for tax, at the rate of five mills, amounting to $43,603.60 from which settlement defendant duly appealed to this court.

" [5. We find from the evidence that the actual value in cash of defendant's capital stock, between the 1st and 15th days of November, 1892, was not $8,720,719.16, the amount at which it was appraised by the auditor general and state treasurer; but having in view all the evidence and considering all of the facts which are, in our judgment, relevant, on the principles more fully explained below, we find that the actual value in cash of defendant's capital stock at the date mentioned was $4,000,000.] [1]

" [We have decided in opinion recently filed in Commonwealth v. Sharon Coal Co., 23 June Term, 1893, and Commonwealth v. Edgerton Coal Co., 21 June Term, 1893, [affirmed in 164 Pa. 284,] that the intent and meaning of section 4 of the revenue act of 1891, P. L. 229, is that only so much of the income of a corporation—using this word as an equivalent for both net earnings and amount of profit made—as is 'made and either declared in dividends or carried into surplus or sinking fund,' is to be taken as the test of minimum value in appraising the capital stock of a corporation; and that the amount and rate per cent of dividends made and the amount carried into surplus or sinking fund during the tax year do not furnish an absolute indication or measure of the actual value in cash of the capital stock, but are to be considered with all other relevant facts in determining what is its actual value in cash.

" These decisions settle, for us, the law of this case on the points thus decided, and lead to the result that the appraisement made by the auditor general and state treasurer, and the settlement based thereon, cannot be sustained merely as a conclusion of law, but must stand or fall on the actual facts of the case.   In other words, the question we have to decide on this appeal is, what is the actual value in cash of defendant's capital stock.] [2]

"It has been settled by numerous decisions, which are cited and affirmed in Commonwealth v. Standard Oil Co., 101 Pa. 119, that the tax on capital stock imposed by the taxing acts of this state is not a franchise or license tax, but is a tax on the property and assets of the corporation. But it by no means follows that the capital stock and the tangible property and assets are identical either in substance or in value. [The capital stock, it is true, represents the property and assets of the corporation, but it represents also the value of its franchises and privileges and facilities for doing business, and the success with which the business is actually carried on, so far as these are denoted and expressed by the pecuniary results realized; and the tax on capital stock is, by the express terms of the act of 1891, intended to reach those elements of value. See preamble 6, P. L. 1891, p. 229.] [10]

" The case of Commonwealth v. Hamilton Mfg. Co., 12 Allen, 298, contains an admirable discussion and exposition, by BIGELOW, C. J., of the difference which may exist between the value of the tangible property and assets of a corporation and the value of its capital stock, which is so apt for our purpose that we make copious extracts therefrom, with the remark that the whole opinion ought to be read in this connection. Assuming that the value of the capital stock of a corporation is equal to the value of all its shares—the theory of the act of 1891, which makes the market price of the shares a test of the actual value of the capital stock—he says: ' The aggregate market value of all shares, by which we understand the cash price for which the shares will sell in the market, does not necessarily indicate the actual value or amount of property which a corporation may own. The price for which all the shares would sell may greatly exceed the aggregate of the corporate property, or it may fall very far short of it. Undoubtedly the amount of property belonging to a corporation is one of the considerations which enter into the market value of its shares; but such market value also embraces other essential elements. It is not made up solely by the valuation or estimate which may be put on the corporate property, but it also includes the profits and gains which have attended its operations, the prospect of its future success, the nature and extent of its corporate rights and privileges, and the skill and ability with which its business

is managed. In other words, it is the estimate put on the potentiality of a corporation, on its capacity to avail itself profitably of its franchise, and on the mode in which it uses its privileges as a corporate body, which materially influences and often controls its market value. . . . There may be two corporations organized with similar powers, having the same number of shares, the same amount of property, of capital, and both may be engaged in the same branch of business. The market value of the shares in one corporation may be double that of the other, because one is prosperous and likely to make large gains, while the other is unsuccessful, and is carrying on a business which may prove unprofitable, or lead to heavy loss. . . . The tax is therefore laid, not on capital stock as signifying the money paid in to carry on the business of the corporation, or the property purchased and owned by the corporation, but on capital stock representing the aggregate of the market value of the shares. The price for which shares may be sold does not depend on the value or amount of property belonging to a corporation, but rather on the capacity of the corporation to use its property, in connection with its corporate powers and privileges, advantageously and profitably, and upon the present prosperity, prospective earnings and profitable final results of the corporate business. . . . Nor are we able to see any reason why the aggregate market value of all the shares of a corporation, representing as it does the estimate put, not merely on the property of the corporation, but also on the rights, privileges, capacities and present and prospective results of the corporate organization and business—in other words, on its franchise—is not a legitimate and just method of arriving at a basis on which to calculate an excise or tax.'

" These extracts, and still more the whole opinion from which they are taken, abundantly show that the actual value in cash of defendant's capital stock is not to be determined solely by ascertaining the value of its tangible property and assets, but that many other elements of value are to be considered. Chief Justice BIGELOW's discussion, it is true, leads him to the conclusion that the tax he is considering is a franchise tax and not a tax on tangible property; but this view, when the case was considered in the Supreme Court of the United States in Hamilton Co. v. Massachusetts, 6 Wall. 632, was accepted only be-

cause it was thought to be required by the particular provision of the constitution of the state of Massachusetts and the construction which had long been put upon it by the Supreme Court of the state, which, as a question of the construction of a state statute, was binding on the federal court. Thus Mr. Justice CLIFFORD, delivering the opinion and referring to the decision that the tax in question was a franchise tax, at page 639, said : ' Separated from the peculiar provision of the state constitution and the long practice under the original decision [in Portland Bank v. Apthorp, 12 Mass. 252], the present decision of the state court upon the subject might well be criticised as founded in unsubstantial distinctions, but when weighed as an exposition of that peculiar clause [of the state constitution] and in view of the long practice of the state, commencing long before the prior decision was made, it is not possible to withhold from the conclusion a full and unqualified concurrence. . . . Fifty years have elapsed since that decision was made, and the practice in substance and in effect still continues, having been repeatedly sanctioned by the unanimous decision of the highest judicial authority of the state.'

" The Chief Justice and Justices GRIER and MILLER refused to be bound by the construction put upon the statute by the state court and dissented, on the ground that the tax in question was a tax on property of the corporation and not a franchise tax.

" On the subject of taxing corporate franchises as property, Justice CLIFFORD said : ' Corporate franchises . . . . are legal estimates and not mere naked powers granted to the corporation, but powers coupled with an interest which vest in the corporation, by virtue of their charter, and . . . . the privileges and franchises of a private corporation, unless exempt in terms which amount to a contract, are as much the legitimate subjects of taxation as any other property of the citizens within the sovereign power of the state.'

" And in Wilmington Railroad v. Reid, 13 Wall. 264, Mr. Justice DAVIS, delivering the opinion of the court, said : ' It is insisted, however, that the tax on the franchise is something entirely distinct from the property of the corporation, and that the legislature was, therefore, not inhibited from taxing it. This position is equally unsound with the others taken in this case. Nothing is better settled than that the franchise of a

private corporation—which in its application to a railroad is the privilege of running it and taking fare and freight,—is property, and of the most valuable kind, as it cannot be taken, for public use even, without compensation. It is true, it is not the same sort of property as the rolling stock, the roadbed, and depot grounds, but it is, equally with them, covered by the general term the property of the company.'

" [There is, therefore, no legal principle in the way of holding that the tax on capital stock in this state is a tax on property and at the same time including in the appraisement the value of the franchises and privileges enjoyed and exercised by the corporation, and determining the value of these by the material result of their exercise.] [7]

" Acting upon the principles suggested by the foregoing discussion, the members of this court, both of whom sat at the trial, concur in the findings of fact above set forth, and in the conclusion that the defendant's capital stock was between the 1st and 15th of November, 1892, of the actual value in cash of $4,000,000 ; and the commonwealth is therefore entitled to judgment as follows :

" Value of capital stock, $4,000,000.

| | |
|---|---|
| Tax, 5 mills . . . . . . . | $20,000 |
| Interest from April 1, 1893, to January 1, 1894, at 12 per cent per annum . . . . . | 1,800 |
| Attorney general's commission, 5 per cent . . | 1,000 |
| Total . . . . . | $22,800 |

" For which amount judgment is directed to be entered in favor of the commonwealth and against the defendant if exceptions be not filed within the time limited by law."

Defendant made a motion for a new trial but it was refused. Exceptions, involving the questions considered in the portions of the opinion in brackets, were filed by both parties.

*Errors assigned* by plaintiffs were, (1, 2) dismissal of exceptions to findings in brackets, quoting them.

*Errors assigned* by defendant were, among others, (7–10) portions of opinion in brackets, quoting them ; (11) in overruling motion for new trial ; (12) in entering judgment for commonwealth.

*Wm. B. Lamberton* and *S. P. Wolverton*, for defendant, appellant.—The franchises should not be included in the valuation: Cooley on Taxation, 232, 379; Com. v. Pittsburg & Connellsville R. R., 58 Pa. 26; Iron Co. v. Carbon Co., 39 Pa. 251; Iron Co. v. Luzerne Co., 42 Pa. 424; Bank v. Boston, 1 Cush. 142; Com. v. Gas Light Co., 12 Allen, 75; Bank v. Rochester, 37 N. Y. 365; Minot v. R. R., 18 Wall. 206; Coal Co. v. Com., 79 Pa. 100; Phila. Contributionship v. Com., 98 Pa. 48; Worth v. R. R., 89 N. C. 301; Provident Inst. v. Mass., 6 Wall. 611; Com. v. R. R., 150 Pa. 234.

A tax on the capital stock is a tax on the property and assets: Com. v. Standard Oil Co., 101 Pa. 120; Fox's Ap., 112 Pa. 337; Loughlin's Ap., 19 W. N. 517; Com. v. Coal Co., 5 Pa. C. C. 90 (note); Com. v. R. R., 145 Pa. 96; Com. v. Tel. Co., 129 Pa. 217; Com. v. Westinghouse Electric Co., 151 Pa. 265; Com. v. Air Brake Co., 151 Pa. 276; Com. v. Pa. Coal Co., 5 Pa. 90; Bank v. Com., 9 Wall. 353.

Franchises are not an investment of capital: Cooley on Taxation, .222; Com. v. Standard Oil Co., 101 Pa. 119; Com. v. Pittsburg, etc. R. R., 74 Pa. 83; City v. Phila. & Ridge Ave. Pas. Ry., 102 Pa. 190; Iron Co. v. Com., 55 Pa. 448; Com. v. Oil Co., 59 Pa. 61; Coatesville Gas Co. v. Chester County, 97 Pa. 476.

The construction of former acts in pari materia leads to the same conclusion: Com. v. Lehigh Valley R. R., 104 Pa. 89; Haddock v. Com., 103 Pa. 243; Fidelity Co. v. Loughlin, 139 Pa. 612; Evans v. Ross, 107 Pa. 231; Endlich, Stat. §§ 367, 368; acts of April 12, 1859, P. L. 529; May 1, 1868, P. L. 108; April 24, 1874, P. L. 68; March 20, 1877, P. L. 6; June 7, 1879, §§ 2, 4, P. L. 112; June 8, 1891, P. L. 229; Bank v. Hines, 3 Ohio, 1; Desty on Taxation, 463; R. R. v. Comrs., 75 N. C. 474; Board of Assessment v. Alabama Co., 59 Ala. 551; People v. Hastings, 29 Cal. 449; San Mateo Co. v. R. R., 13 Fed. R. 722.

There must be uniformity in the mode of assessment as well as in the rate: Worth v. R. R., 89 N. C. 301; Santa Clara Co. v. R. R., 18 Fed. R. 385; Bank v. Hines, 3 Ohio, 1; Cooley, Taxation, §§ 185, 351; Kittanning Coal Co. v. Com., 79 Pa. 105; Com. v. Lehigh Valley R. R., 104 Pa. 89; Com. v. Phœnix Iron Co., 242 Jan. T., 1868, unreported.

A preamble cannot either restrict or extend the enacting part when the language of the latter is plain and not open to doubt either as to its meaning or scope : Endlich, Stat. §§ 64, 65 ; R. R. v. Casey, 26 Pa. 287 ; Cochran v. Library Co., 6 Phila. 492 ; Davey v. Ruffel, 3 Dist. R. 75 ; Com. v. Lackawanna Co. Comrs., 7 Pa. C. C. R. 173 ; Sewickley Boro. v. Sholes, 118 Pa. 165 ; Bittinger's Est., 129 Pa. 338 ; Phœnixville Boro., 109 Pa. 44 ; Dorsey's Ap., 72 Pa. 192 ; Oxford Borough Street, 2 Dist. R., 327 ; McGee's Ap., 114 Pa. 470 ; R. R. v. City, 23 W. N. 324 ; Hatfield v. Com., 120 Pa. 395 ; Com. v. Swab, 8 Pa. C. C. R. 111 ; State Line & Juniata R. R. Co.'s Ap., 77 Pa. 429.

*W. U. Hensel*, attorney general, *James A. Stranahan*, deputy attorney general, with him, for commonwealth, appellee.—The court made no error in adding to the tangible property and assets of the corporation, the worth of its franchises as elements of actual cash value : Act of June 8, 1891, P. L. 230 ; Com. v. Hamilton Mfg. Co., 12 Allen, 298 ; Hamilton Mfg. Co. v. Mass., 6 Wall. 632 ; Wilmington R. R. v. Reid, 13 Wall. 264.

The title of the act of 1891 is not insufficient : Com. v. Martin, 107 Pa. 185 ; Juniata R. R. Co.'s Ap., 77 Pa. 431 ; Allegheny County Home's Case, 77 Pa. 77 ; Millvale Boro. v. Ry., 131 Pa. 19 ; Craig v. Church, 88 Pa. 42 ; Com. v. Sellers, 130 Pa. 35 ; Boro. v. Owens, 6 W. N. 492 ; Clearfield Co. v. Poor Directors, 135 Pa. 88 ; Com. v. Deibert, 2 Dist. R. 446 ; Esling's Ap., 89 Pa. 205 ; Pottstown Boro., 117 Pa. 538 ; Hawes Mfg. Co.'s Ap., 1 Mona. 353.

COMMONWEALTH V. RAILROAD, APPELLANT.

OPINION BY MR. JUSTICE McCOLLUM, Nov. 13, 1894 :

The defendant company complains on this appeal of the finding that the actual value in cash of its capital stock between the 1st and 15th of November, 1892, was $4,000,000 and that its franchises were considered as an element or factor in ascertaining such value. It also complains that its motion for a new trial was overruled.

The actual cash value of the company's capital stock, at the time stated, was, under the stipulation filed, a fact to be found by the court upon relevant testimony. If the evidence submitted for the purpose of ascertaining this fact was pertinent

to the issue and sufficient to warrant the finding complained of, the latter must stand as the basis of the taxation in question. The finding of the court is on the footing of the verdict of a jury. An examination of the evidence before the court in this case has satisfied us that it authorized the finding in respect to the value of the stock, and that we would not therefore be justified in setting the same aside.

The motion for a new trial was based upon the allegation that, after the hearing was concluded, the defendant company's contract with The Philadelphia & Reading Railroad Company was annulled by the receivers, and that in consequence thereof the defendant company sustained a loss which might injuriously affect the value of its capital stock. The motion was made after the opinion of the court was filed and while exceptions thereto were pending. The allowance or refusal of this motion was within the discretion of the learned court below and it is not a matter for review on this appeal.

In ascertaining the actual value of the capital stock, was it proper to take into consideration, as affecting that value, the franchises of the company? We think this question is affirmatively answered by the act of June 8, 1891, under which the valuation was made. The capital stock represents the franchises as well as other property of the company. In the 6th preamble of the act there appears a plain legislative purpose to include the franchises in fixing the value of the stock, and this is in harmony with the title and the provisions in respect to the taxation of it.

The specifications of error are overruled.

Judgment affirmed.

COMMONWEALTH, APPELLANT, v. RAILROAD.

OPINION BY MR. JUSTICE McCOLLUM, Nov. 13, 1894:

The single question raised by this appeal is ruled against the commonwealth in Com. v. Edgerton Coal Company and other cases from the Middle District, decided at this term [164 Pa. 284]. There is therefore no occasion to discuss or consider it in this case.

Judgment affirmed.