188    205
24 SC ¹173

## Commonwealth of Pennsylvania *v.* Ontario, Carbondale & Scranton Railway Company, Appellant.

*Trial before court without jury—Findings of fact—Practice, Supreme Court.*

Where a case is tried by a court without a jury, the Supreme Court will assume the correctness of the findings of fact where there is evidence to sustain them, and the trial court is not bound to elaborate its reasoning from the evidence or particularize the mental process by which its findings are arrived at.

*Corporations—Tax on capital stock—Finding of fact.*

On an appeal from settlement against a railroad company for tax on its capital stock, if it be true that the company leased its road and failed to furnish equipments according to agreement, and the lessee had furnished them at great expense, the defendant was not injured by failure of the court to so find, because it is by no means clear that this would depreciate the value of the stock; and if it did do so, the defendant, no doubt, had the benefit of it.

*Taxation—Corporation—Tax on capital stock—Debt.*

In ascertaining the value of the capital stock of a corporation for the purposes of state taxation under the act of June 8, 1891, the indebtedness of the company cannot be deducted from the value of the property and assets otherwise ascertained, but it may be considered as one of the relevant facts bearing upon the value of the stock.

In ascertaining the actual value of the capital stock of a corporation, the value of the franchise may be taken into consideration.

In a case of undervaluation of capital stock the court may take into consideration the corporation's tangible property, assets and franchises.

Argued June 1, 1897.   Reargued February 23, 1898.   Appeal, No. 19, May T., 1897, by defendant, from judgment of C. P. Dauphin Co., Commonwealth Docket, 1896, No. 612, on

appeal from tax settlement. Before STERRETT, C. J., GREEN, WILLIAMS, MCCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed. MITCHELL, GREEN and WILLIAMS, JJ., dissent.

Appeal from tax settlement.

The facts appear by the opinion of SIMONTON, P. J., which was as follows:

This is an appeal from a settlement made by the auditor general and state treasurer June 30, 1896, against the corporation defendant, for tax on capital stock, for the tax year 1895. It was tried by the court without a jury, as provided by the act of April 22, 1874, and on the testimony and documentary evidence we find the following facts:

1. The defendant is a corporation created under the laws of the state of Pennsylvania, and by consolidation with certain corporations of the state of New York; it is the owner of 53.66 miles of railroads, of which 50.75 are in Pennsylvania and the remainder in the state of New York, and it has been leased to a New York corporation, the New York, Ontario & Western Railroad Company, for the term of ninety-nine years, the lessee agreeing to pay a rental of $75,000 per annum and such sum as may be necessary to maintain the organization of the corporation defendant, not exceeding $3,000, and in addition, five per cent of the gross earnings, tolls and income derived by the lessee from the use and occupation of defendant's railway, not exceeding $75,000 per annum.

2. Defendant has an authorized and paid-up capital stock of $1,500,000, divided into 15,000 shares of the par value of $100 each. Its income received from the corporation lessee during the tax year 1895 was $103,867, and it has a funded debt outstanding of $1,500,000. There were no sales of its stock during said tax year. All of its bonds and capital stock are owned by the lessee, the New York, Ontario & Western Railroad Company. The cost of defendant's road was $3,750,523.16.

3. In December, 1895, defendant's president and treasurer, after having taken the oath prescribed by law, made the report to the auditor general required by the act of June, 1891, and appraised defendant's capital stock at $10.00 per share for 15,000 shares, amounting in all to $150,000, and defendant has paid the tax due upon said $150,000, amounting to $750.

The auditor general and state treasurer being dissatisfied with the appraisement and valuation so made and returned, valued and appraised the proportion of the capital stock of defendant for the tax year 1895 taxable in Pennsylvania at $1,318,770.17, stating at length in their appraisement their reasons for so doing, which are hereby referred to and made part of this finding, and settled an account in accordance with said appraisement, charging defendant with a tax at the rate of five mills, amounting to $6,593.85, from which settlement defendant appealed to this court, and on the trial the report and appraisement made by defendant's officers, the appraisement and settlement made by the auditor general and state treasurer, defendant's specifications of objections as to the settlement and other evidence, oral and documentary, were offered and heard.

4. After a full consideration of all the relevant evidence in the case, we find that the appraisement made by defendant's officers is not correct, and that the appraisement made by the auditor general and state treasurer is greater than the actual value in cash of defendant's capital stock; and we further find that the actual value in cash of defendant's capital stock representing its tangible property assets, and its franchises, between the 1st and 15th of November, 1895, was $1,000,000.

### CONCLUSIONS OF LAW.

1. A tax on the capital stock of a corporation is a tax on its property and assets, including its franchises. The question of the actual value in cash of the capital stock is a question of fact, which must be determined by considering the value of defendant's tangible property and assets of every kind, including its bonds, mortgages and money at interest, and its franchises and privileges; and the amount of incumbrances on its property and franchises is also a relevant fact to be considered, but it is not to be specifically deducted from the valuation so ascertained and determined.

2. The commonwealth is entitled to recover from defendant in this case a tax at the rate of five mills on the dollar of 50.75–53.66 of the actual value in cash of defendant's capital stock, which we have found to be $1,000,000, with interest at the rate of twelve per cent per annum from July 29, 1896, and attorney general's commission at the rate of five per cent.

3. Judgment is therefore directed to be entered in favor of the commonwealth and against the defendant as follows:

| | | |
|---|---|---:|
| Tax on $945,957.32 at five mills, | . . | $4,729.87 |
| Credit, . . . . . . . . | | 750.00 |
| Balance, . . . . . . | | $3,979.87 |

| | | |
|---|---|---:|
| Interest at twelve per cent per annum from July 29, 1896, to May 6, 1897, . . . | | $ 367.47 |
| Attorney general's commission, five per cent, | | 198.99 |
| Total, . . . . . . | | $4,546.33 |

For which amount the prothonotary is directed to enter judgment in favor of the commonwealth and against defendant, if exceptions be not filed within the time limited by law.

On exception the court further found as follows: We find the fact to be that by the terms of the lease referred to in this exception the defendant company was to furnish such engines, coaches and cars as might be necessary properly to equip its road, and that it did not furnish the same, and that the lessee company furnished such equipment as was necessary for it to use in operating the road. We cannot find from the testimony what amount the lessee expended in furnishing this equipment.

The court overruled the other exceptions, and entered judgment in accordance with the appeal.

*Error assigned* was the judgment of the court.

*James A. Stranahan*, with him *James E. Burr*, for appellant.

*John P. Elkin*, deputy attorney general, with him *Henry C. McCormick*, attorney general, for appellee.

OPINION BY MR. JUSTICE DEAN, October 17, 1898:

The defendant railroad is 53.66 miles in length, running from Scranton, Pennsylvania, to Hanover Junction in New York; the number of miles in this state, is 50.75. It has a paid-up capital of $1,500,000, divided into 15,000 shares of the par value of $100 per share; its funded debt is $1,300,000. It is operated by the New York, Ontario and Western Railroad Company under a lease for ninety-nine years; an annual rental

of $75,000 is to be paid, also a sufficient sum to maintain the organization of the lessor company, not exceeding $3,000 annually; all the bonds and stock of the lessor company, are owned by the lessee, a corporation chartered under the laws of New York. There were no sales of stock during the tax year 1895. The company officers made report to the commonwealth, appraising the 15,000 shares of capital stock at the rate of $10.00 per share, or $150,000 for the whole, making the tax, at five mills, under the act of 1891, $750. The auditor general and state treasurer, being dissatisfied with this appraisement, from the facts in this report and the company's returns to the railroad commissioners of New York, raised the valuation to $1,318,770.17. The company appealed from this appraisement to the court of common pleas. After full hearing of evidence, oral and documentary, the court found the actual value in cash of the capital stock to be $1,000,000, this sum representing the company's tangible property, assets and franchises.

From the judgment entered on this finding the company appeals, assigning eleven errors, which may be treated as practically two, for, except the first, the alleged errors are the construction put by the court upon the act of 1891. The court adopted the same view of that act as in Com. v. New York, Penna. & Ohio R. R. Co., in which opinion of this court is handed down this day, ante, p. 169.

There being no sales of the stock for that year, of course, the court had not the aid of sales or average sales in finding the actual value of the capital stock; if such sales had been made, what effect they would have had on the finding is altogether problematical. There is nothing, however, on the face of the report or in the facts proved which point to any error in the judgment. In the report of the company's officers the " gross earnings during the year, from the lease of the road," are put at $103,867. The application of the larger part of this income to indebtedness of the lessor company, is claimed to be shown from the book account, leaving only a surplus of $26,269.89. But, however this may be, it seems to us, a road with such an earning capacity must necessarily have a very valuable property and franchise. In the return the actual value of the capital stock is put at only $150,000. The court below found the actual value to be much higher. There is nothing in the

facts indicating error in this change. As the court was not bound to elaborate its reasoning from the evidence, or particularize the mental process by which its finding of fact was arrived at, we must assume the correctness of it when there was evidence, as there was, to sustain it.

Appellant does not seriously contend that the rule adopted by the court below and expressly affirmed by this Court in Com. v. Delaware, Susquehanna & Schuylkill R. R., 165 Pa. 44, does not, in ascertaining the actual value of the capital stock, authorize an estimation of the value of the franchise, but he does argue that that was a novel and extreme case, and should not be extended to cases where the facts are entirely different. But we see no reason why the same principle should not be applied to any case of undervaluation of the capital stock by the company's officers. In that case the company appraised its capital stock at $2,000,000; the total cost of its road was about $1,160,000, yet the evidence showed it had paid one dividend during the year of forty per cent on its full paid-up capital of $1,000,000. The court below was of the opinion that the actual value of the capital stock, including the franchises and privileges enjoyed by the company, was $4,000,000, exactly doubling the amount of the appraisement by the company's officers. On appeal, in opinion by our Brother McCollum, the judgment was affirmed on the ground that the actual value of the capital stock was a fact to be found by the court under the agreement waiving a jury trial, and in ascertaining the fact it was proper, under the act of 1891, to take into consideration the value of the franchise.

Why is not that case a precedent in such as the one before us? In it there was a large undervaluation by the company's officers which, it was held, was not binding on the commonwealth's officers or the court; it is the same here. In that case, in doubling the valuation, the court took into view the value of the franchises and privileges enjoyed by the corporation; in this case, the court considers the corporation's tangible property, assets and franchises. The construction of the sixth preamble of the act of 1891, and the method adopted by the court in ascertaining the actual value of the capital stock in the case cited, are directly in point here, and in all cases of undervaluation. We see no reason to modify or restrict the decision in

Com. v. Delaware, Susquehanna & Schuylkill R. R., supra, by the facts in this case; indeed, we could not do so without modifying or restricting the plain terms of the act of 1891.

As to the first assignment, that the court did not find as a fact that, by the lease, the lessor company was to furnish the equipment, and having failed to do so, it was furnished by the lessee company at an expense of about $800,000, we do not think the failure to formally find the fact of record material. If the fact be as claimed, then the lessor company failed to keep its covenant with the lessee in that particular; if this had the effect of depreciating the actual value of the capital stock, we have no doubt appellant had the benefit of it. It is by no means clear to us that it could have had any such effect; certainly not to the extent which would warrant a reversal of the judgment.

All the assignments of error are overruled, and the judgment is affirmed.